CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **WAKEEL ABDUL-SABUR,** ) | |
| Plaintiff, ) | Case No. 7:24-cv-00890 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **DEPARTMENT OF JUSTICE,** ) | Senior United States District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Wakeel Abdul-Sabur, proceeding pro se, is currently serving a state sentence in the custody of the Virginia Department of Corrections. He filed this civil rights action against the United States Department of Justice (DOJ) challenging the denial of his petition for commutation of a federal sentence. He also has filed a motion to seal the civil rights action. ECF No. 4. For the reasons set forth below, the complaint is **DISMISSED** for failure to state a claim upon which relief may be granted, and Abdul-Sabur's motion to seal is **DENIED**.

### I.   Background

Abdul-Sabur is currently incarcerated at River North Correctional Center in Independence, Virginia. Compl., ECF No. 1, at 1. Upon the completion of his state sentence, he must serve a 46-month federal sentence imposed by another judge in this district. Mem. Supp. Compl., ECF No. 1-1, at 2; see also United States v. Abdul-Sabur, No. 6:99-cr-30073, 2023 WL 4400054, at *1 (W.D. Va. July 7, 2023) (summarizing the procedural history in the federal criminal case and noting that Abdul-Sabur is scheduled to be released from state custody in 2051).

Abdul-Sabur filed a petition for commutation of his federal sentence with the DOJ's Office of the Pardon Attorney (Pardon Office). Id. He alleges that the Pardon Office determined that he was not eligible to have the sentence commutated "based upon a DOJ regulation which provides that a defendant must have reported to a federal correctional facility and begun to serve the sentence" before seeking commutation.[1] Id. Abdul-Sabur claims that the determination violated his federal constitutional rights to due process and equal protection. Id. He notes that "President Joe Biden gave his son Hunter Biden a full pardon before the imposition of the sentences for felony convictions" even though "Hunter Biden never reported to a federal correctional facility." Id. Abdul-Sabur alleges that, by doing so, President Biden "violated his own administration's regulation." Id. at 3.

Abdul-Sabur seeks "declaratory and injunctive relief," including the reinstatement of his commutation petition. Id. He also seeks "expedited review." Id.

## II.  Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity. 28 U.S.C. § 1915A(a). The court must "dismiss a complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

---

[1] Abdul-Sabur does not cite to a specific regulation in his complaint. It appears that he may be referring to § 9-140.113 of the DOJ's Justice Manual. See U.S. Dep't of Justice, Justice Manual § 9-140.113 (2018), available at https://www.justice.gov/jm/justice-manual ("Requests for commutation generally are not accepted unless and until a person has begun serving that sentence.").

2

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Discussion

**A. Claims Asserted in the Complaint**

Before turning to the claims presented by Abdul-Sabur, the court briefly summarizes the law applicable to federal clemency proceedings. The Constitution of the United States "bestows solely on the President the 'Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.'" Rosemond v. Hudgins, 92 F.4th 518, 525 (4th Cir. 2024) (quoting U.S. Const. art. II, § 2, cl. 2). "This clemency power means that the President can both pardon an underlying conviction or commute any part of a sentence." Id. The President's authority to grant clemency "may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment." Id. (internal quotation marks omitted).

The clemency power bestowed on the President is "not only expansive, but also exclusive." Id. It cannot be exercised or altered by Congress or the courts. Id. "Similarly, although modern Presidents have voluntarily channeled the exercise of their clemency power through the Pardon Office, that too does not create any constitutional limits on the ability to exercise that power or whether to use the Pardon Office at all." Id. at 528. "As the relevant federal regulations acknowledge at the outset, they 'are advisory only and for the internal guidance of Department of Justice personnel.'" Id. (quoting 28 C.F.R. § 1.11). The regulations "create no enforceable rights in persons applying for executive clemency, nor do they restrict

3

the authority granted to the President under Article II, section 2 of the Constitution." 28 C.F.R. § 1.11.

Ultimately, "[t]he President's authority to grant clemency is unlimited, save for the limits imposed by the Constitution." Rosemond, 92 F.4th at 525. "So long as the President does not use the power to violate another provision of the Constitution, Congress and the Judiciary have no power to interfere with its exercise." Andrews v. Warden, 958 F.3d 1072, 1076 (11th Cir. 2020); see also Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 276 (1998) ("[P]ardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review.") (internal quotation marks omitted).

Against this backdrop, the court turns to Adbul-Sabur's claims for violations of his rights to due process and equal protection.

**1.  Due Process**

"The Due Process Clause of the Fifth Amendment requires the Government to provide due process of law before it deprives someone of 'life, liberty, or property.'"[2] Dep't of State v. Munoz, 602 U.S. 899, 910 (2024). "To state a procedural due process claim, a plaintiff must first identify a protected liberty or property interest and then demonstrate deprivation of that interest without due process of law." Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023) (internal quotation marks and brackets omitted).

---

[2] Abdul-Sabur claims that he was deprived of due process and equal protection in violation of the Fourteenth Amendment. That amendment, however, "applies only to the states." Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

4

Abdul-Sabur's claim fails at the first step—he does not allege that he was deprived of any interest protected by the Due Process Clause. It is well settled that noncapital defendants do not have a liberty interest in receiving or being considered for clemency. See Dist. Atty's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 67–68 (2009); see also Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 464–65 (1997) (concluding that "an inmate has 'no constitutional or inherent right' to commutation of his sentence" and that the "unilateral hope" of receiving clemency does not implicate the protections of the Due Process Clause) (quoting Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979)). In the absence of a protected interest, Abdul-Sabur has no viable claim for violation of his right to due process. See Griggs v. Fleming, 88 F. App'x 705, 705 (5th Cir. 2004) ("Because Griggs had no constitutional right to a Presidential pardon, he was not entitled to due process in connection with the procedure by which his petition for a pardon was considered.").

### 2. Equal Protection

Although the Fifth Amendment does not specifically mention equal protection, the Supreme Court has recognized that "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." Washington v. Davis, 426 U.S. 229, 239 (1976). The Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2 (1975). Consequently, "cases analyzing claims of state discrimination in violation of the Equal Protection Clause [of the Fourteenth Amendment] are equally applicable to claims of federal discrimination under the equal protection guarantee

5

of the Fifth Amendment." United States v. Carrillo-Lopez, 68 F.4th 1133, 1139 (9th Cir. 2023) (citing Buckley v. Valeo, 424 U.S. 1, 93 (1976)).

The Supreme Court has explained that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "Accordingly, [t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Alive Church of the Nazarene, Inc. v. Prince William Cnty., 59 F.4th 92, 112 (4th Cir. 2023) (internal quotation marks and alteration omitted). If the plaintiff makes that showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Martin v. Duffy, 858 F.3d 239, 252 (4th Cir. 2017) (internal quotation marks omitted).

Abdul-Sabur's equal protection claim fails at the first step. To make out the first part of an equal protection claim, a plaintiff must show that he and other individuals who were treated differently "are 'in all relevant respects alike.'" Doe v. Settle, 24 F.4th 932, 939 (4th Cir. 2022) (quoting Nordlinger v. Hahn, 505 U.S. 2, 10 (1992)). Consequently, a plaintiff "must allege more than 'broad generalities' in identifying a comparator." Stradford v. Sec'y Pa. Dep't of Corr., 53 F.4th 67, 74 (3d Cir. 2022) (quoting Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1204 (11th Cir. 2007)). "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996). "Factors used to consider a commutation petition include: (1) 'disparity or undue severity of sentence'; (2) 'critical illness or old age'; (3) 'meritorious

service rendered to the government by the petitioner, e.g., cooperation with investigative or prosecutive efforts that has not been adequately rewarded by other official action'; (4) 'amount of time already served'; and (5) 'availability of other remedies.'" United States v. Dalton, No. 96-cr-00276, 2015 WL 8026432, at *3 (N.D. Cal. Dec. 7, 2015) (quoting U.S. Dep't of Justice, Justice Manual § 9-140.113). "[T]hese factors are not exclusive," however, and "'other equitable factors may also provide a basis for recommending commutation'" in a particular case. Id. (quoting Justice Manual § 9-140.113).

Abdul-Sabur's complaint does not allege facts sufficient to show that he was intentionally treated differently than similarly situated individuals who petitioned for commutation of their federal sentences. Indeed, he does not identify any individual whose federal sentence, criminal history, and background are similar to his, and whose commutation petition was approved by the Pardon Office, even though the individual had not yet begun serving the federal sentence.[3] Because Abdul-Sabur does not plausibly allege he was treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination, he fails to state a claim for denial of equal protection.

---

[3] To the extent that Abdul-Sabur suggests that he was treated differently than Hunter Biden, he does not plausibly allege that they are similarly situated in all relevant respects or that any disparate treatment was the result of intentional or purposeful discrimination by the Pardon Office. As Abdul-Sabur recognizes in his petition, Hunter Biden received a "full pardon" from his father as opposed to having an existing sentence commuted on the recommendation of the Pardon Office. Mem. Supp. Compl. at 2. While both pardons and commutations are forms of clemency, "a 'pardon' . . . generally negate[s] the effects of the underlying conviction, while a 'commutation' leaves the conviction in place and lessens the sentence in some way." Rosemond, 92 F.4th at 525 n.5. Moreover, the DOJ's pardon regulations are "not binding on the president," Erickson v. Upton, No. 4:17-cv-00591, 2018 WL 2047848, at *1 (N.D. Tex. May 2, 2018) (citing 28 C.F.R. § 1.11), and thus did not restrict President Biden's authority to pardon his son.

**B.      Motion to Seal the Case**

Abdul-Sabur has not set forth any reason that would justify sealing the entire case. See W.D. Va. Local Gen. Rule 9(b)(7) ("No case may be sealed in its entirety except by order of the Court for cause shown, obtained in accordance with this rule."). Accordingly, the court denies the motion to seal. The court will, however, direct the Clerk to return the letter accompanying the motion to Abdul-Sabur without docketing it, since the letter contains sensitive information.

### IV.    Conclusion

For the foregoing reasons, the court concludes that Abdul-Sabur's complaint fails to state a claim upon which relief may be granted. The action is summarily **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1), and the motion to seal the case is **DENIED**. An appropriate order will be entered.

Entered: January 16, 2025

Mike Urbanski
Senior U.S.District Judge
2025.01.16
11:13:51 -05'00'

Michael F. Urbanski
Senior United States District Judge